# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 12-618V
Filed: April 20, 2018
Not for Publication

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| J.T., * | |
| * | |
| Petitioner, * | |
| * | Attorneys' fees and costs decision; |
| v. * | reasonable attorneys' fees and |
| * | costs |
| SECRETARY OF HEALTH * | |
| AND HUMAN SERVICES, * | |
| * | |
| Respondent. * | |
| * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Lisa A. Roquemore, Rancho Santa Margarita, CA, for petitioner.
Lisa A. Watts, Washington, DC, for respondent.

**MILLMAN, Special Master**

### DECISION AWARDING ATTORNEYS' FEES AND COSTS[1]

On September 19, 2012, petitioner filed a petition under the National Childhood Vaccine Injury Act, 42 U.S.C. §§ 300aa-10–34 (2012) alleging that tetanus-diphtheria-acellular pertussis ("Tdap") vaccine he received on October 1, 2009 caused him neurological injury. Pet. at ¶¶ 1, 2.

On December 18, 2012, respondent filed his Rule 4(c) Report conceding entitlement, i.e., that the Tdap vaccine caused petitioner's left brachial neuritis, a Table injury. Respt's Rep. at 6, 7.

On September 24, 2013, the undersigned awarded petitioner and his former counsel Mr. Ronald C. Homer interim attorneys' fees and costs in the amount of $42,170.12. On October 7,

---

[1] Because this unpublished decision contains a reasoned explanation for the special master's action in this case, the special master intends to post this unpublished decision on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). Vaccine Rule 18(b) states that all decisions of the special masters will be made available to the public unless they contain trade secrets or commercial or financial information that is privileged and confidential, or medical or similar information whose disclosure would constitute a clearly unwarranted invasion of privacy. When such a decision is filed, petitioner has 14 days to identify and move to redact such information prior to the document's disclosure. If the special master, upon review, agrees that the identified material fits within the banned categories listed above, the special master shall redact such material from public access.

2013, petitioner's motion to substitute attorney Ms. Lisa A. Roquemore in place of Mr. Homer was granted.

The main barrier to settlement was the calculation of petitioner's earning loss. While respondent calculated the lost earnings to be less than $1 million, petitioner calculated his lost earnings to be approximately $11 million based on both his past income and the estimated economic value of two anticipated future business ventures. On May 21, 2015, respondent filed a motion for a ruling on the basis for calculating petitioner's lost earnings award ("motion for calculating lost earnings"). On July 23, 2015, petitioner responded to respondent's motion for calculating lost earnings. On September 17, 2015, the undersigned issued a Ruling on Calculating Wage Loss ("Ruling" or "Ruling of September 17, 2015") against petitioner concluding petitioner's calculation was based on speculation.

On October 16, 2015, petitioner filed a motion for interlocutory review of the undersigned's Ruling. On October 26, 2015, respondent filed his response to the motion for review, contending that petitioner's motion for review was premature since the undersigned had not rendered a decision on compensation.

On February 1, 2016, Senior Judge Eric Bruggink denied petitioner's motion for review concluding the undersigned's Ruling of September 17, 2015 was not a decision on compensation within the meaning of 42 U.S.C. § 300aa-12(d)(3)(A) and a motion for interlocutory review did not trigger the court's jurisdiction under subsection 12(e)(1).

On August 10, 2017, respondent informally requested by e-mail to the undersigned's law clerk that the undersigned issue a ruling on entitlement. The undersigned filed a Ruling on Entitlement and a damages decision that same day.

On August 23, 2017, judgment issued on damages.

On December 22, 2017, petitioner filed a motion for attorneys' fees and costs ("motion"). In his motion, petitioner requests a total of $417,478.53, comprised of (1) $265,954.50 for attorneys' fees and costs incurred by Law Office of Lisa A. Roquemore; (2) a $66,752.79 balance for petitioner's life care planner Ms. Liz Holakiewicz's expert fees and costs of $68,752.79;[2] (3) a $14,306.25 balance for petitioner's economist Mr. Brad Johnson's expert fees and costs of $81,626.25;[3] and (4) $70,464.99 for petitioner's personal costs.

On December 27, 2017, respondent filed a response to petitioner's motion explaining he is satisfied that this case meets the statutory requirements for an award of attorneys' fees and costs under 42 U.S.C. § 300aa-15(e)(1)(A)-(B). Resp. at 2. Respondent "respectfully recommends that the [undersigned] exercise her discretion and determine a reasonable award for

---

[2] Ms. Holakiewicz previously received a $2,000.00 retainer, which is being sought by petitioner as part of his personal costs. Doc. 124, at 2 n.2.
[3] Mr. Johnson previously received a $15,000.00 retainer and payments of $67,320.00, which are being sought by petitioner as part of his personal costs. Id. n.3.

2

attorneys' fees and costs." Id. at 3.

On March 27, 2018, the undersigned issued a Decision awarding attorneys' fees and costs. On April 11, 2018, petitioner filed a "motion for reconsideration of court's decision awarding attorney's [sic] fees and costs filed March 27, 2018; request for hearing." In the motion for reconsideration, petitioner requested additional attorneys' fees and costs in the amount of $6,983.70 for working on the motion for reconsideration. Thus, the attorneys' fees and costs incurred by Law Office of Lisa A. Roquemore are now $272,938.20.

On April 17, 2018, the undersigned issued an Order granting in part and denying in part petitioner's motion for reconsideration. The undersigned denied petitioner's request for hearing. Based upon the new evidence regarding petitioner's life care planner's hours expended on the case as well as petitioner's explanation of his intransigence, the undersigned vacated the award amount totals in the prior Decision on attorneys' fees and costs. The undersigned increases compensation in this Decision to Ms. Holakievicz by $31,647.44 and to Ms. Roquemore by $6,983.70.

## DISCUSSION

### I. Legal Standard for Attorneys' Fees and Costs

#### A. In General

The Vaccine Act permits an award of "reasonable attorneys' fees" and "other costs." 42 U.S.C. § 300aa-15(e)(1). The special master has "wide discretion in determining the reasonableness" of attorneys' fees and costs. Perreira v. Sec'y of HHS, 27 Fed. Cl. 29, 34 (1992), aff'd, 33 F.3d 1375 (Fed. Cir. 1994); see also Saxton ex rel. Saxton v. Sec'y of HHS, 3 F.3d 1517, 1519 (Fed. Cir. 1993) ("Vaccine program special masters are also entitled to use their prior experience in reviewing fee applications.").

### II. Reasonableness of Requested Attorneys' Fees and Costs

A "reasonable hourly rate" is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Avera, 515 F.3d 1343, 1348. This rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of petitioner's attorney." Rodriguez v. Sec'y of HHS, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing Avera, 515 F. 3d at 1349). For cases in which forum rates apply, McCulloch provides the framework for determining the appropriate hourly rate range for attorneys' fees based upon the attorneys' experience. See McCulloch v.Sec'y of HHS, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

Once the applicable hourly rate is determined, it is applied to the "number of hours reasonably expended on the litigation." Avera, 515 F.3d at 1348. Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." Saxton v. Sec'y of HHS, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting Hensley v. Eckerhart, 461 U.S. 424,

434 (1983)). Counsel must submit fee requests that include contemporaneous and specific billing entries indicating the task performed, the number of hours expended on the task, and who performed the task. See Savin v. Sec'y of HHS, 85 Fed. Cl. 313, 316–18 (Fed. Cl. 2008). It is "well within the special master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." Id. Furthermore, the special master may reduce fees *sua sponte*, apart from objections raised by respondent and without providing petitioners notice and opportunity to respond. See Sabella v. Sec'y of HHS, 86 Fed. Cl. 201, 208–09 (Fed. Cl. 2009). A special master need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. Broekelschen v. Sec'y of HHS, 102 Fed. Cl. 719, 729 (Fed. Cl. 2011).

1. **Reasonable Hourly Rates**

Petitioner requests the following hourly rates:

|  | 2013 | 2014 | 2015 | 2016 | 2017 |
|---|---|---|---|---|---|
| Lisa Roquemore | $355 | $365 | $365 | $400 | $409 |
| Paralegal | $125 | $125 | $125 | $135 | $138 |

Because these rates are consistent with the ranges provided in McCulloch v. Sec'y of HHS, No. 09-293V, 2015 WL 5634323, *16 (Fed. Cl. Spec. Mstr. Oct. 18, 2016), the undersigned finds petitioner's requested hourly rates for Ms. Roquemore and her paralegal reasonable.

2. **Reduction of Billable Hours**

    a. **Billing for Administrative Time**

It is firmly established that billing for clerical and other secretarial work is not permitted in the Vaccine Program. Rochester v. United States, 18 Cl.Ct. 379, 387 (1989) (denied an award of fees for time billed by a secretary and found that "[these] services … should be considered as normal overhead office costs included within the attorneys' fees rates"); Mostovoy v. Sec'y of HHS, 2016 WL 720969, at *5 (Fed. Cl. Spec. Mstr. Feb. 4, 2016).

Ms. Roquemore and her paralegal's billing records contain multiple entries that are best characterized as administrative tasks, such as troubleshooting issues with technology, scheduling telephonic conferences, and downloading and uploading documents. Ms. Roquemore billed a combined 0.5 hours and her paralegal billed a combined 1.1 hours for troubleshooting issues with technology.[4] For instance, on October 10, 2013, Ms. Roquemore billed 0.1 hours for a conference with her paralegal regarding difficulties accessing a zip file and her paralegal billed 0.7 hours for unzipping and extracting the records. Doc. 124-2, at 7.

---

[4] Doc. 124-2, at 7, 21, and 98 (Ms. Roquemore's entries dated: 10/10/2013 (0.1); 12/16/2013 (0.2); 12/17/2013 (0.1); and 7/20/2015 (0.1)) and (paralegal's entries dated: 10/10/2013 (0.7); 10/14/2013 (0.2); 12/16/2013 (0.1); and 7/20/2015 (0.1)).

Ms. Roquemore billed a total of 13.3 hours for scheduling conferences with the court, petitioner, economist, and life care planner, and her paralegal billed 1.9 hours for scheduling, reviewing, and downloading scheduling orders.[5]

In addition, Ms. Roquemore's paralegal billed a combined 14.3 hours for downloading photos or documents from either a dropbox, petitioner's google account, or the CM/ECF system, converting photos to .pdf., uploading a worksheet to the dropbox, and scanning documents. [6]

These types of entries are clerical in nature and do not constitute billable time. Accordingly such entries will be deducted from the fee award, amounting to a **reduction of $7,339.00.**

   b. **Research**

Throughout the billing invoices, Ms. Roquemore billed: (1) 1 hour for researching

---

[5] Doc. 124-2, at 8, 9, 10, 13, 17, 20, 23, 24, 25, 26, 29, 31, 33, 34, 40, 42, 43, 47, 51, 52, 55, 61, 65, 66, 68, 71, 74, 75, 76, 78, 82, 84, 85, 86, 87, 90, 91, 106, 107, 112, 119, 125, 137, 141, 144, 145, 148, 150, 152, 156, 160, 163, 170, 174, and 175 (Ms. Roquemore's entries dated: 10/21/2013 (0.1); 10/24/2013 (0.1); 10/25/2013 (0.2); 10/29/2013 (0.2); 11/4/2013 (0.1); 11/27/2013 (0.2); 12/9/2013 (0.3); 1/3/2014 (0.4); 1/6/2014 (0.4); 1/7/2014 (0.3); 1/9/2014 (0.1); 1/20/2014 (0.2); 2/6/2014 (0.2); 2/28/2014 (0.1); 3/4/2014 (0.2); 3/5/2014 (0.1); 3/6/2014 (0.2); 3/24/2014 (0.4); 4/22/2014 (0.1); 4/24/2014 (0.2); 5/2/2014 (0.2); 5/5/2014 (0.1); 5/20/2014 (0.1); 5/21/2014 (0.1); 6/19/2014 (0.1); 6/23/2014 (0.1); 7/23/2014 (0.1); 8/25/2014 (0.2); 10/3/2014 (0.3); 10/16/2014 (0.2); 11/3/2014 (0.3); 12/1/2014 (0.1); 12/8/2014 (0.1); 1/8/2015 (0.1); 1/9/2015 (0.3); 1/12/2015 (0.3); 1/13/2015 (0.1); 1/28/2015 (0.3); 3/9/2015 (0.2); 3/25/2015 (0.2); 3/27/2015 (0.4); 3/30/2015 (0.1); 4/9/2015 (0.2); 4/10/2015 (0.2); 4/20/2015 (0.2); 4/21/2015 (0.2); 4/23/2015 (0.2); 5/12/2015 (0.2); 5/18/2015 (0.1); 5/20/2015 (0.2); 5/21/2015 (0.1); 5/22/2015 (0.2); 9/2/2015 (0.1); 9/14/2015 (0.1); 9/18/2015 (0.2); 10/22/2015 (0.1); 12/18/2015 (0.1); 2/22/2016 (0.1); 2/24/2016 (0.1); 6/21/2016 (0.1); 7/22/2016 (0.1); 9/6/2016 (0.1); 9/7/2016 (0.1); 9/21/2016 (0.3); 9/26/2016 (0.3); 10/22/2016 (0.1); 10/24/2016 (0.1); 11/1/2016 (0.1); 1/12/2017 (0.2); 2/10/2017 (0.1); 2/13/2017 (0.1); 2/28/2017 (0.2); 3/10/2017 (0.1); 4/3/2017 (0.2); 5/8/2017 (0.1); 6/20/2017 (0.2); and 6/29/2017 (0.1)) and (paralegal's entries dated: 11/4/2013 (0.1); 1/6/2014 (0.1); 1/20/2014 (0.1); 3/6/2014 (0.1); 5/20/2014 (0.1); 6/23/2014 (0.1); 8/25/2014 (0.1); 10/9/2014 (0.1); 1/13/2015 (0.1); 3/27/2015 (0.1); 10/21/2015 (0.1); 2/24/2016 (0.1); 11/1/2016 (0.1); 12/14/2016 (0.1); 1/11/2017 (0.1); 2/28/2017 (0.2); and 5/12/2017 (0.2)).

[6] Doc. 124-2, at 21, 39, 40, 42, 43, 44, 45, 46, 47, 56, 60, 61, 64, 65, 73, 87, 90, 91, 93, 99, 102, 106, 112, 117, 121, 137, 144, 145, 153, 156, 157, 163, 180, 182, and 183 (entries dated: 12/17/2013 (1); 4/21/2014 (1); 4/22/2014 (0.7); 5/2/2014 (0.5); 5/5/2014 (0.4); 5/6/2014 (0.4); 5/14/2014 (0.1); 5/16/2014 (0.1); 5/21/2014 (0.2); 7/28/2014 (2); 8/20/2014 (0.2); 8/25/2014 (0.1); 9/23/2014 (0.1); 9/25/2014 (0.1); 1/6/2015 (0.4); 4/20/2015 (0.7); 5/5/2015 (0.1); 5/21/2015 (0.3); 6/4/2015 (0.1); 7/16/2015 (0.1); 7/21/2015 (0.1); 8/12/2015 (0.3); 9/2/2015 (0.1); 9/9/2015 (0.1); 9/17/2015 (0.1); 10/16/2015 (0.1); 10/26/2015 (0.1); 12/1/2015 (1.5); 12/3/2015 (0.2); 1/4/2016 (0.1); 1/12/2016 (0.1); 5/16/2016 (0.1); 5/19/2016 (0.1); 5/25/2016 (0.1); 6/13/2016 (0.2); 9/19/2016 (0.1); 9/26/2016 (0.1); 12/28/2016 (0.1); 1/10/2017 (0.5); 1/11/2017 (0.1); 1/25/2017 (0.1); 3/21/2017 (0.2); 8/10/2017 (0.3); 8/14/2017 (0.1); 8/23/2017 (0.1); 9/6/2017 (0.2); 9/18/2017 (0.1); 9/25/2017 (0.2); and 9/26/2017 (0.2)).

"Restatement Torts and cases regarding damages;"[7] (2) 6.5 hours for researching cases on redactions and "financial privilege and tax returns;"[8] (3) 0.6 hours for researching "out-of-pocket unreimbursed expenses;"[9] (4) 0.2 hours for researching and reviewing "Chief Special Master Dorsey's decisions regarding health insurance offset;"[10] and (5) 1.5 hours for researching and reviewing cases on "granting interim damages."[11] The full amount of this time should not be compensated as "it is inappropriate for counsel to bill time for educating themselves about basic aspects of the Vaccine Program." Matthews v. Sec'y of HHS, No. 14-1111V, 2016 WL 2853910, at *2 (Fed. Cl. Spec. Mstr. Apr. 18, 2016). "An inexperienced attorney may not ethically bill his client to learn about an area of law in which he is unfamiliar. If an attorney may not bill his client for this task, the attorney may also not bill the Program for this task." Carter v. Sec'y of HHS, No. 04-1500V, 2007 WL 2241877, at *5 (Fed. Cl. Spec. Mstr. July 13, 2007). Ms. Roquemore has over 29 years of experience and this is not her first case in the Vaccine Program. Therefore, the undersigned finds the total 9.8 hours of research is not compensable and the nonpayment results in a **deduction of $4,957.00**.

Moreover, while petitioner's economist Mr. Brad Johnson billed a total of 55 hours for "lost earnings analysis," Doc. 124-6, at 20-29, Ms. Roquemore billed a combined 20.2 hours for researching the issues of lost wages calculations and career paths before the undersigned issued the Ruling on Calculating Wage Loss.[12] The undersigned finds Ms. Roquemore's excessive billing for researching wage loss unreasonable since petitioner hired an economist to analyze it and the economist spent a significant amount of time doing so. This adjustment results in a **further deduction of $7,373.00.**[13]

### c. Interlocutory Appeal

After the undersigned issued the Ruling of September 17, 2015, petitioner filed a motion for review on October 16, 2015. Senior Judge Bruggink denied the motion for review on February 1, 2016 concluding the undersigned's Ruling was not a decision on compensation within the meaning of 42 U.S.C. § 300aa-12(d)(3)(A) that can be reviewed under subsection 12(e)(1). J.T. v. Sec'y of HHS, 125 Fed.Cl. 164, 166 (Feb 1, 2016). The Court's jurisdiction to

---

[7] Id. at 58 (entry dated 8/1/2014 (1)).

[8] Id. at 107 and 108 (entries dated: 9/22/2015 (1); 9/23/2015 (0.8); 9/24/2015 (3.2); and 9/25/2015 (1.5)).

[9] Id. at 118 (entry dated: 12/16/2015 (0.6)).

[10] Id. at 141 (entry dated: 7/12/2016 (0.2)).

[11] Id. at 157 (entry dated: 1/17/2017 (1.5)).

[12] Id. at 52, 54, 58, 61, 84, 97, 105, 107, 108, 111, 118, 138, 143 and 157 (entries dated: 6/26/2014 (2); 7/16/2014 (4); 8/1/2014 (1); 8/27/2014 (1.3); 8/28/2014 (1.5); 3/26/2015 (0.5); 7/9/2015 (4); 7/10/2015 (1); 9/1/2015 (2.4); and 9/2/2015 (2.5)).

[13] After the undersigned issued the Ruling of September 17, 2015, during her preparation for the Motion for Interim Review, Ms. Roquemore billed another 8.5 hours for research regarding lost wages (entries dated: 10/7/2015 (4.5); 10/9/2015 (2); 10/13/2015 (2)) and 2 hours for researching Senior Judge Bruggink's decisions (entries dated: 10/16/2015(2)). Because the undersigned will not pay Ms. Roquemore for her work on the interlocutory appeal, see infra Section II.2.c, the undersigned does not include these 10.5 hours in the current calculation in order to avoid duplicative deductions.

review decisions of the special masters is governed by 42 U.S.C. § 300aa-12(d)(3)(A), which provides that:

> A special master to whom a petition has been assigned shall issue a decision on such petition with respect to whether compensation is to be provided . . . and the amount of such compensation. . . . The decision of the special master may be reviewed by the United States Court of Federal Claims in accordance with subsection (e) of this section.

Id. Subsection 12(e)(1) provides that appeal may be taken "[u]pon issuance of the special master's decision" by either party by filing a motion for review within 30 days of the issuance of the decision. Id.

Because an interlocutory appeal is not permissible under 42 U.S.C. § 300aa-12(d)(3) when there is no final decision, the undersigned will not compensate petitioner any attorneys' fees and costs associated with the interlocutory appeal since petitioner had no reasonable basis to do so. During a status conference held on October 19, 2015, the undersigned explained the same to Ms. Roquemore and suggested that she should withdraw the appeal. Ms. Roquemore did not withdraw the motion to review. From September 17, 2015 to February 2, 2016, Ms. Roquemore billed a combined 53.9 hours[14] and her paralegal billed 7.3 hours[15] for their work related to the interlocutory appeal. For example, Ms. Roquemore billed 8.5 hours for conducting research for a motion for review regarding lost wages;[16] 2 hours for researching Senior Judge Bruggink's decisions in the Vaccine Program;[17] 3.1 hours for researching the issue of interlocutory appeals and decisions;[18] 23.6 hours for drafting, reviewing and revising the motion for review;[19] 0.5 hours for drafting a motion to exceed page limit;[20] 6.6 hours for drafting a reply to respondent's response to petitioner's motion for review;[21] 1.1 hours for reviewing respondent's response;[22] 0.3 hours for drafting a motion for leave to file a reply;[23] and 8.2 hours for other work such as communicating with petitioner, a colleague, respondent, and the paralegal, reviewing cases, and viewing Senior Judge Bruggink's order and decision denying the motion for review.[24] The undersigned finds these hours not compensable and the nonpayment results in **a deduction of $20,663.00.**

---

[14] See supra n.16-24.
[15] Doc. 124-2 (entries dated: 10/15/2015 (5.8); 10/16/2015 (1); and 10/29/2015 (0.5)).
[16] Id. (entries dated: 10/7/2015 (4.5); 10/9/2015 (2); and 10/13/2015 (2)).
[17] Id. (entry dated: 10/16/2015 (2)).
[18] Id. (entry dated: 10/20/2015 (3.1)).
[19] Id. (entries dated: 10/9/2015 (0.5); 10/12/2015 (6.5); 10/13/2015 (4); 10/14/2015 (6.9); 10/15/2015 (4.7); and 10/16/2015 (1)).
[20] Id. (entries dated: 10/15/2015 (0.3); and 10/16/2015 (0.2)).
[21] Doc. 124-2 (entries dated: 10/27/2015 (1.3); 10/28/2015 (3.5); and 10/29/2015 (1.8)).
[22] Id. (entries dated: 10/27/2015 (0.8); and 10/29/2015 (0.3)).
[23] Id. (entry dated: 10/29/2015(0.3)).
[24] Id. (entries dated: 9/17/2015 (0.2); 10/9/2015 (0.5); 10/14/2015 (0.2); 10/15/2015 (0.9); 10/16/2015 (0.6); 10/20/2015 (2); 10/21/2015 (0.5); 10/28/2015 (0.2); 10/29/2015 (0.8); 11/4/2015 (0.1); 1/4/2016 (0.2); 1/11/2016 (0.1); 2/1/2016 (0.5); and 2/2/2016 (1.4)).

### d. Excessive Billing

Special masters have previously reduced the fees paid to petitioners due to excessive and duplicative billing. See Ericzon v. Sec'y of HHS, No. 10-103V, 2016 WL 447770 (Fed. Cl. Spec. Mstr. Jan. 15, 2016) (reduced overall fee award by 10 percent due to excessive and duplicative billing); Raymo v. Sec'y of HHS, No. 11-654V, 2016 WL 7212323 (Fed. Cl. Spec. Mstr. Nov. 2, 2016) (reduced overall fee award by 20 percent), *mot. for rev. denied*, 129 Fed. Cl. 691 (2016). Special masters have previously noted the inefficiency that results when cases are staffed by multiple individuals and have reduced fees accordingly. See Sabella, 86 Fed. Cl. at 209.

After carefully reviewing the billing records, the undersigned finds that counsel billed for an excessive amount of time to complete various tasks. For example, Ms. Roquemore filed a response to respondent's motion for determining lost earnings with supporting documents and she billed: (1) a combined 26.1 hours for drafting, reviewing, and revising the response;[25] (2) 3.5 hours for reviewing cases cited in respondent's motion;[26] and (3) 7 hours for reviewing, analyzing, and drafting the supporting documents filed with the response.[27] The undersigned finds a total of 25 hours for Ms. Roquemore's work on the response and the supporting documents reasonable. This adjustment results in a **deduction of $4,234.00.**

Ms. Roquemore billed a combined 3.9 hours for reviewing the undersigned's Ruling of September 17, 2015 and 3.3 hours for drafting a memorandum of various issues within the Ruling. Doc. 124-2, at 107 and 110. The undersigned finds it should not take an experienced attorney more than 90 minutes to read and analyze a 16-page Ruling. This adjustment results in a **deduction of $2,080.50.**

Ms. Roquemore billed 3.9 hours for drafting and revising an 8-page motion for redaction.[28] The undersigned finds 2 hours should be sufficient. This adjustment results in a **deduction of $693.50.**

From September 18, 2017 to December 22, 2017, Ms. Roquemore billed 14.6 hours and her paralegal billed 35.7 hours for their work on the motion for attorneys' fees and costs. Doc. 124-2, at 182-193. The undersigned finds that 20 hours for the paralegal and 10 hours for Ms. Roquemore are sufficient for the motion for attorneys' fees and costs. This adjustment results in **a deduction of $4,048.00.**

Thus, the total amount of attorneys' fees for Law Office of Lisa A. Roquemore is

---

[25] Id. (entries dated: 7/10/2015 (4.3); 7/13/2015 (3.1); 7/14/2015 (2); 7/15/2015 (1.5); 7/16/2015 (4.7); 7/17/2015 (5.3); 7/20/2015 (1); 7/21/2015 (2.4); 7/22/2015 (1); and 7/23/2015 (0.8)).
[26] Id. (entries dated: 7/14/2015 (2) and 7/15/2015 (1.5)).
[27] Doc. 124-2 (entries dates: 7/13/2015 (2.5); 7/14/2015 (0.3); 7/16/2015 (1); 7/21/2015 (2.2); and 7/22/2015 (1)).
[28] Id. at 108 (entries dated: 9/25/2015 (3.6) and 9/28/2015 (0.3)).

reduced by $51,388.00 and $220,602.10 is awarded. The undersigned finds the attorneys' costs reasonable. Therefore, the total amount paid for attorneys' fees and costs incurred by Law Office of Lisa A. Roquemore is **$221,550.20.**

### 3. Life Care Planner's Fees and Costs

Petitioner requested the reimbursement of fees and expenses for his life care planner, Ms. Liz Holakiewicz, RN. Doc. 124-7, at 4. Fees for experts are subject to the same reasonableness standards as fees for attorneys. Baker v. Sec'y of HHS, No. 99-653V, 2005 WL 589431, at *1 (Fed. Cl. Spec. Mstr. Feb. 24, 2005).

Ms. Holakiewicz requests an hourly rate of $225.00 for work she performed in 2013 and 2014 and an hourly rate of $250.00 for her work performed in 2015, 2016, and 2017 on the case. Id. The undersigned finds Ms. Holakiewicz's requested rates reasonable given her 30 years of extensive experience as a life care planner and a registered nurse. Ms. Holakiewicz requests reimbursement for a total of 285.40 hours expended on the case from October 2013 to October 2017.[29] After carefully reviewing Ms. Holakiewicz's billing records, the undersigned finds some of Ms. Holakiewicz's hours expended on the case not compensable or excessive.

Ms. Holakiewicz billed 8.2 hours for performing administrative tasks such as scheduling appointments and telephonic conferences.[30] These types of entries are administrative in nature and do not constitute billable time. Accordingly such entries will be deducted from the fee award, amounting to a **reduction of $1942.50**.

Ms. Holakiewicz billed for an excessive amount of time to complete various tasks, including an excessive amount of communication with Ms. Roquemore and others. She billed a combined 13.9 hours for research (mainly is for researching costs of providers' services); 37.7 hours for reviewing medical records; 59.8 hours for correspondence with counsel; 72.1 hours for correspondence with petitioner; 40.1 hours for correspondence with others; 52.6

---

[29] Ms. Holakiewicz's billing entries mix her services and her costs. Doc. 125-5. For any cost generated, she put "1.00" at the same column as where she put the amount of hours expended for services. Id. at 3, 4, and 23 (entries dated: 11/3/2013(x2); 11/5/2013(x4); 11/13/2013; and 2/20/2015). Thus, the undersigned excludes the 8 hours from the calculation of total hours for her services. Moreover, because Ms. Holakiewicz billed her time spent traveling in 2013 at one-half of her hourly rate, Doc 125-5, at 3 and 4, the undersigned excludes the 14.9 hours of traveling time from the calculation. The undersigned will add requested costs and the time billed for traveling to the total amount of compensation for attorneys' fees and costs.

[30] Doc. 125-5 (entries dated 10/16/2013 (0.2); 10/17/2013 (0.1); 11/6/2013 (0.4); 11/11/2013 (1.8); 11/12/2013 (0.6); 11/13/2013 (0.2); 2/20/2014 (0.1); 4/25/2014 (0.1); 5/19/2014 (0.1); 6/18/2014 (0.2); 9/16/2014 (0.2); 10/20/2014 (0.1); 10/27/2014 (0.4); 3/25/2015 (0.1); 3/27/2015 (0.2); 4/8/2015 (0.3); 4/10/2015 (0.2); 4/19/2015 (0.2); 4/20/2015 (0.2); 4/23/2015 (0.2); 5/18/2015 (0.1); 6/8/2015 (0.1); 6/22/2015 (0.2); 8/18/2015 (0.2); 2/16/2016 (0.2); 3/11/2016 (0.2); 9/1/2016 (0.2); 9/7/2016 (0.2); 9/21/2016 (0.1); 9/29/2016 (0.1); 12/7/2016 (0.4); 1/11/2017 (0.1); and 8/15/2017 (0.2)).

hours for life care plan preparation; and 8.2 hours for home visit.[31] Based on her almost 27 years of experience as a special master, the undersigned finds that the following amount of hours is reasonable and sufficient for Ms. Holakiewicz to complete activities described in her invoices: 10 hours for researching costs of providers; 30 hours for medical records review; 40 hours for correspondence with Ms. Roquemore;[32] all the hours for correspondence with petitioner except for those billed for performing administrative tasks mentioned above;[33] 20 hours for correspondence with others; 45 hours for life care plan preparation; and 8.2 hours for home visit. This adjustment results in a further **deduction of $13,684.16**.[34]

The undersigned finds Ms. Holakiewicz's 14.9 hours of traveling in 2013 billed at one-half of her hourly rate[35] as well as her costs reasonable.[36] Thus, the total amount of compensation for Ms. Holakiewicz's fees and costs is **$53,126.13**. Because Ms. Holakiewicz previously received a $2,000.00 retainer, which is being sought by petitioner as part of his personal costs,[37] the court awards Ms. Holakiewicz **$51,126.13**.

#### 4. Economist's Fees and Costs

Petitioner's economist Mr. Brad Johnson billed a total of 154.25 hours at an hourly rate of $525.00 for his work on the case from March 2014 to April 2017. The undersigned finds

---

[31] See generally Doc. 125-5 and Ex. 23.

[32] Id. Of the 285.40 hours Ms. Holakiewicz billed to this case, over 20% are for emails and phone calls with Ms. Roquemore, not including those hours spent on communication with both Ms. Roquemore and petitioner simultaneously. Ms. Roquemore has been cautioned in the past that her communication with Ms. Holakiewicz is excessive. D.S. v. Sec'y of HHS, No. 10-77V, 2017 WL 6397826, at *6 (Fed. Cl. Spec. Mstr. November 20, 2017); Brown v. Sec'y of HHS, No. 09-426V, 2013 WL 1790212, at *2 (Fed. Cl. Spec. Mstr. April 8, 2013); Torday v. Sec'y of HHS, No. 07-372V, 2011 WL 2680687, at *9 (Fed. Cl. Spec. Mstr. Apr. 7, 2011)(emphasizing that with an experienced life care planner, there is no need for extensive attorney involvement). While counsel does play a role in the life care planning process, Ms. Roquemore is communicating excessively with her life care planner, which causes both Ms. Roquemore and Ms. Holakiewicz to bill excessively for communication with each other. Thus, the undersigned echoes her colleagues' warnings to Ms. Roquemore regarding her excessive communications with Ms. Holakiewicz and cautions her that excessive communication with her life care planner may not be fully reimbursed in the future.

[33] In his motion for reconsideration, petitioner explained that he "was a very active participant . . . required significant advocacy, even down to the last pair of gloves that he needed." Mot. for Reconsideration, at 9. The undersigned recognizes most of the hours Ms. Holakiewicz billed for correspondence with petitioner due to petitioner's intransigence.

[34] Ms. Holakiewicz billed a total of 285.40 hours expended in this case. Among the 285.40 hours, Ms. Holakiewicz billed 210.70 hours for her work in 2013 and 2014 which constitutes 73.83% of the total amount of hours billed, Doc. 125-5, at 2-23, and 74.70 hours in 2015, 2016 and 2017 which is 26.17% of the total amount of hours billed. Id. at 23-35. Therefore, the undersigned reduces 73.83% of the total reduction of hours at an hourly rate of $225.00 and 26.17% of that at an hourly rate of $250.00.

[35] Doc. 125-5, at 3 and 4 (entries dated: 11/3/2013 (7.5) and 11/5/2013 (7.4)).

[36] Doc. 124-7, at 4.

[37] See Supra n.2.

Mr. Johnson's hourly rate and number of hours expended on the case reasonable. Because Mr. Johnson previously received a $15,000.00 retainer and payments of $67,320.00, which are being sought by petitioner as part of his personal costs, the court awards Mr. Johnson **$14,306.25.**

## CONCLUSION

Based on her experience and review of the billing records submitted by petitioner, the undersigned finds the majority of petitioner's attorneys' fees and costs request reasonable. **Accordingly, the court awards:**

a. **$221,550.20**, representing attorneys' fees and costs incurred by Law Office of Lisa A. Roquemore. The award shall be in the form of a check made payable jointly to petitioner and Law Office of Lisa A. Roquemore in the amount of **$221,550.20**;

b. **$51,126.13**, representing an unpaid balance of life care planner's fees and costs incurred by Ms. Liz Holakiewicz. The award shall be in the form of a check made payable jointly to petitioner and Ms. Liz Holakiewicz in the amount of **$51,126.13**;

c. **$14,306.25**, representing an unpaid balance of economist's fees and costs incurred by Mr. Brad Johnson. The award shall be in the form of a check made payable jointly to petitioner and Mr. Brad Johnson in the amount of **$14,306.25**; and

d. **$70,464.99**, representing petitioner's personal costs. The award shall be in the form of a check made payable to petitioner in the amount of **$70,464.99**.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[38]

**IT IS SO ORDERED.**

Dated: April 20, 2018 /s/ Laura D. Millman
Laura D. Millman
Special Master

---

[38] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party, either separately or jointly, filing a notice renouncing the right to seek review.